IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) Civ. No. 13-00489 ACK-RLP |
| Plaintiff, | ) |
| v. | ) |
| JAIME WONG CABALIS, RICKY WONG CABALIS, and JARED WONG CABALIS, | ) |
| Defendants. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART STATE FARM'S MOTION FOR SUMMARY JUDGMENT

For the following reasons, the Court hereby GRANTS IN PART AND DENIES IN PART State Farm's Motion for Summary Judgment. The Court GRANTS the Motion insofar as it concludes that there is no possibility of or basis for coverage under either the Homeowner's Policy or the Umbrella Policy for the underlying claims for loss of society, companionship, comfort, consortium, protection, and filial care and attention. The Court DENIES the Motion insofar as it concludes that there are questions of fact as to the possibility of coverage under the Homeowner's Policy and Umbrella Policy for the underlying claims for negligent infliction of emotional distress.

## FACTUAL BACKGROUND

This case involves an insurance coverage dispute

between Plaintiff State Farm Fire and Casualty Company ("State Farm") and Defendants Jaime Wong Cabalis, Ricky Wong Cabalis, and Jared Wong Cabalis (collectively, "Defendants"). State Farm issued a Homeowner's Policy, policy number 51-BL-5020-5, covering property located at 15-0427 Limu Street, Pahoa, Hawaii, with Defendant Jaime Wong Cabalis ("Jaime") as the named insured, and with a stated liability limit of $100,000 per occurrence. (Pl.'s CSF, Ex. B ("Homeowner's Policy").) State Farm also issued a Personal Liability Umbrella Policy, policy number 51-B0-2142-4, with Defendants Jaime and Ricky Wong Cabalis ("Ricky") as the named insureds, and a stated limit of $1,000,000. (Pl.'s CSF, Ex. C ("Umbrella Policy").)

Defendants are named as defendants in a personal injury lawsuit filed on behalf of Bryson F.K. Wong, a resident son of Defendants Jaime and Ricky, in the Circuit Court of the Third Circuit, State of Hawaii. See Joanne S. Wong, et al. v. Crosman Corporation, et al., Civ. No. 13-1-0327 (the "underlying lawsuit"). The underlying complaint alleges that Bryson F.K. Wong ("Bryson"), who was a minor at the time, was rendered permanently and totally disabled when an air rifle purchased and owned by Bryson's brother, Defendant Jared Wong Cabalis ("Jared"), accidentally went off and hit Bryson in the heart. (Pl.'s CSF, Ex. A (Underlying Complaint).) Jared and Bryson both lived with Jaime and Ricky at the insured Limu Street property at the time

of the accident. (Counterclaim (Doc. No. 18) ¶ 9.) The underlying

complaint asserts products liability claims against Crossman

Corporation and Wal-Mart Stores, Inc., as well as negligence

claims against the Defendants. (Pl.'s CSF, Ex. A.)

Named as plaintiffs in the underlying complaint are

Stephen and Joanne Wong, Bryson's grandparents, who at all

relevant times lived next door to Defendants. (Id.) The

underlying complaint alleges that Stephen and Joanne have

sustained severe emotional distress, loss of society and

companionship, comfort, consortium, protection, and loss of

filial care and attention as a result of Bryson's injuries. (Id.)

Defendants tendered the defense of the underlying

lawsuit to State Farm, and State Farm has provided a defense with

full reservation of rights. In the instant suit, State Farm seeks

a declaration that it has no duty to defend or indemnify

Defendants in the underlying lawsuit because the underlying

claims do not give rise to coverage under the Homeowner's Policy

or the Umbrella Policy.

## PROCEDURAL BACKGROUND

On September 25, 2013, State Farm filed its Complaint

for Declaratory Relief, seeking a declaration of its rights and

obligations to defend and indemnify Defendants against the claims

made in the underlying lawsuit. (Doc. No. 1.) Defendants filed

their Answer, along with a Counterclaim for Declaratory Relief,

against State Farm on March 27, 2014. (Doc. No. 18.) State Farm
filed its Answer to the Counterclaim on September 23, 2014. (Doc.
No. 22.)

On September 29, 2014, State Farm filed the instant
Motion for Summary Judgment, along with a concise statement of
facts and several exhibits.[1/] (Doc. Nos. 23 & 24.) Defendants
filed their memorandum in opposition, supported by a concise
statement of facts on November 13, 2014. (Doc. Nos. 26 & 27.)
State Farm filed its reply on November 20, 2014. (Doc. No. 28.)
The hearing on the motion was held on December 4, 2014.[2/]

## STANDARD OF REVIEW

Summary judgment is appropriate when a "movant shows

---

[1/] The Court notes that State Farm violated the Local Rules
by attaching its supporting exhibits to the Motion, rather than
to their separate concise statement of facts. See Local Rule
56.1(h).

[2/] At the hearing, counsel for the Defendants indicated that
she had newly obtained deposition testimony from Stephen and
Joanne regarding their experiences on the day of the accident.
She also indicated that the depositions had not yet been made
available to State Farm's counsel for review. The Court therefore
ordered counsel to provide the depositions to her opposing
counsel, and further ordered that both parties submit additional
briefing addressing the new deposition testimony by December 18,
2014. Both parties timely filed their supplemental briefs;
however, State Farm stated in its filing that it never received
the depositions from defense counsel. (Doc. Nos. 32 & 33.) The
Court therefore ordered counsel for Defendants to file the
depositions with the Court and hand-deliver copies to State Farm,
providing the Court with a certificate of service. (Doc. No. 34.)
The Court granted State Farm an additional week after service to
file supplemental briefing addressing the new deposition
testimony; State Farm timely filed its supplemental brief on
December 26, 2014. (Doc. No. 36.)

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251–52 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. <u>Id.</u> at 587.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 585. "[T]he requirement is that there be

no genuine issue of material fact . . . . Only disputes over
facts that might affect the outcome of the suit under the
governing law will properly preclude the entry of summary
judgment." Anderson, 477 U.S. at 247-48 (emphasis in original).
Also, "[t]he mere existence of a scintilla of evidence in support
of the non-moving party's position is not sufficient[]" to defeat
summary judgment. Triton Energy Corp. v. Square D Co., 68 F.3d
1216, 1221 (9th Cir. 1995). Likewise, the nonmoving party "cannot
defeat summary judgment with allegations in the complaint, or
with unsupported conjecture or conclusory statements." Hernandez
v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).

## DISCUSSION

        In its Motion, State Farm seeks summary judgment as to
its duty to indemnify and defend Defendants against the claims
asserted in the underlying lawsuit. State Farm asserts that the
underlying claims are excluded from coverage under both the
Homeowner's Policy and the Umbrella Policy and, thus, it is
entitled to judgment as a matter of law that there is no duty to
indemnify or defend.

        Federal jurisdiction is proper under 28 U.S.C. § 1332
based upon diversity of citizenship; State Farm is an Illinois
corporation, and Defendants are residents and citizens of the
State of Hawaii. (Compl. ¶¶ 1-2.) Thus, Hawaii substantive law
applies in this suit based upon diversity jurisdiction. See,

e.g., Burlington Ins. Co. v. United Coatings Mfg. Co., Inc., 518
F. Supp. 2d 1241, 1246 (D. Haw. 2007); Apana v. TIG Ins. Co., 504
F. Supp. 2d 998, 1003 (D. Haw. 2007). "In the absence of
controlling state law, a federal court sitting in diversity must
[generally] use its own best judgment in predicting how the
state's highest court would decide the case." Apana, 504 F. Supp.
2d at 1003 (citations and internal quotation marks omitted)).

       The Court will first outline the legal framework under
Hawaii law used to interpret the insurance policies at issue and
determine the scope of State Farm's coverage duties, and then
address the parties' arguments as to the instant Motion.

## I.   Framework for Construing Insurance Contracts

       "Every insurance contract shall be construed according
to the entirety of its terms and conditions as set forth in the
policy, and as amplified, extended, restricted, or modified by
any rider, endorsement or application attached to and made a part
of the policy ." Haw. Rev. Stat. § 431:10-237. Thus, Hawaii law
looks to the plain language of the insurance policy to determine
the scope of an insurer's duties. See, e.g., Sentinel Ins. Co. v.
First Ins. Co. of Haw., 875 P.2d 894, 904 (Haw. 1994); see also
Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co., 807 P.2d 1256,
1260 (Haw. 1991) ("In the context of insurance coverage disputes,
we must look to the language of the insurance policies themselves
to ascertain whether coverage exists, consistent with the insurer

and insured's intent and expectations."); <u>Burlington Ins. Co. v.
Oceanic Design & Constr., Inc.</u>, 383 F.3d 940, 945 (9th Cir. 2004)
("In Hawaii, the terms of an insurance policy are to be
interpreted according to their plain, ordinary, and accepted
sense in common speech.").

Nevertheless, insurance policies must be construed "in
accordance with the reasonable expectations of a layperson."
<u>Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co.</u>, 623
F. Supp. 2d 1189, 1194 (D. Haw. 2009) (citing <u>Dawes v. First Ins.
Co. of Haw.</u>, 883 P.2d 38, 42 (Haw. 1994)). Insurance contracts
are "contracts of adhesion" and Hawaii law "ha[s] long subscribed
to the principle that [they] must be construed liberally in favor
of the insured and any ambiguities must be resolved against the
insurer." <u>Guajardo v. AIG Haw. Ins. Co.</u>, 187 P.3d 580, 586 (Haw.
2008) (citing <u>Dairy Rd. Partners v. Island Ins. Co.</u>, 992 P.2d 93,
106–07 (Haw. 2000) (internal citations, quotation marks,
brackets, and ellipses omitted)); <u>see also</u> <u>Hart v. Ticor Title
Ins. Co.</u>, 272 P.3d 1215, 1223 (Haw. 2012).

The insurer owes the insured a duty to indemnify "for
any loss or injury which comes within the coverage provisions of
the policy, provided it is not removed from coverage by a policy
exclusion." <u>Dairy Rd. Partners</u>, 992 P.2d at 108. An insurer's
duty to defend is broader than its duty to indemnify and "arises
whenever there is the mere potential for coverage." <u>Commerce &</u>

<u>Indus. Ins. Co. v. Bank of Haw.</u>, 832 P.2d 733, 735 (Haw. 1992)

(citations omitted). "In other words, the duty to defend 'rests

primarily on the possibility that coverage exists. This

possibility may be remote but if it exists[,] the [insurer] owes

the insured a defense.'" <u>Dairy Rd. Partners</u>, 992 P.2d at 107

(quoting <u>Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co.</u>,

654 P.2d 1345, 1349 (Haw. 1982)).

In determining whether an insurer has a duty to defend,

Hawaii courts apply the "complaint allegation rule," where

> [t]he focus is on the alleged claims and facts.
> The duty to defend is limited to situations where
> the pleadings have alleged claims for relief which
> fall within the terms for coverage of the
> insurance contract. Where pleadings fail to allege
> any basis for recovery within the coverage clause,
> the insurer has no obligation to defend.

<u>Burlington Ins. Co.</u>, 383 F.3d at 944–45 (internal quotation marks

omitted). "In determining whether coverage exists under a

liability policy, Hawaii courts do not look at the way a litigant

states a claim, but rather at the underlying facts alleged in the

pleadings." <u>Allstate Ins. Co. v. Miller</u>, 732 F. Supp. 2d 1128,

1134 (D. Haw. 2010) (citing <u>Bayudan v. Tradewind Ins. Co.</u>, 957

P.2d 1061, 1069 (Haw. App. 1998)).

Thus, to obtain summary judgment that it has no duty to

defend, an insurer has the burden of proving that there is "no

genuine issue of material fact with respect to whether a

possibility exist[s]" that the insured will incur liability for a

9

claim covered by the policy. <u>Dairy Rd. Partners</u>, 992 P.2d at 107.
In other words, the insurer must prove that it is not possible
for the plaintiff in the underlying lawsuit to prevail against
insured on a claim that is covered by the Policy. <u>See id.</u> at
107-08. "All doubts as to whether a duty to defend exists are
resolved against the insurer and in favor of the insured." <u>Id.</u> at
107. To obtain summary judgment that it has no duty to indemnify,
on the other hand, an insurer is required only to establish the
absence of a genuine issue of material fact regarding the
question of coverage pursuant to the plain language of the
insurance policies. <u>Id.</u> at 108.

## II.   <u>Analysis of Coverage Under the State Farm Policies</u>[3/]

### A.   **Coverage Under the Homeowner's Policy**

Generally, the Homeowner's Policy provides personal
liability coverage "[i]f a claim is made or suit is brought
against an **insured** for damage because of **bodily injury** or

---

[3/] Defendants concede that both the Homeowner's Policy and
the Umbrella Policy expressly exclude any claims made by (or on
behalf of) Bryson for injuries to himself. (Opp'n at 1-2.) Their
assertion that State Farm has a duty to defend and indemnify is
based on the claims made by Stephen and Joanne on behalf of
themselves in the underlying lawsuit. "[W]here a suit raises
potential for indemnification liability of the insurer to the
insured, the insurer has a duty to accept the defense of the
entire suit even though other claims of the complaint fall
outside the policy's coverage." <u>Hawaiian Holiday Macadamia Nut
Co. v. Indus. Indem. Co.</u>, 872 P.2d 230, 233 (Haw. 1994). Thus,
should any of Stephen and Joanne's claims fall within the
policies' coverage, the duty to defend would extend to all claims
against Defendants in the underlying suit.

**property damage** to which this coverage applies, caused by an
**occurrence**." (Def.'s CSF, Ex. B (Homeowner's Policy) § II.L.) An
"occurrence" is defined as "an accident, including exposure to
conditions, which results in: a. **bodily injury**; or b. **property
damage**; during the policy period." (<u>Id.</u> at 2.) This case involves
claims of bodily injury, and not of property damage. The
Homeowner's Policy defines "bodily injury" as "physical injury,
sickness, or disease to a person. This includes required care,
loss of services and death resulting therefrom." (<u>Id.</u>) As is
relevant here, the definition of bodily injury expressly excludes
"emotional distress, mental anguish, humiliation, mental
distress, mental injury, or any similar injury unless it arises
out of actual physical injury to some person." (<u>Id.</u>)

The Homeowner's Policy contains a number of exclusions
to its general grant of personal liability coverage. At issue
here is Exclusion 1.h. Exclusion 1.h excludes coverage for
"**bodily injury** to you or any **insured** within the meaning of part
a. or b. of the definition of insured."[4/] (<u>Id.</u> § II.1.h.) The

---

[4/] The exclusion also states: "This exclusion also applies
to any claim made or suit brought against you or any **insured** to
share damages with or repay someone else who may be obligated to
pay damages because of the **bodily injury** sustained by you or any
insured within the meaning of part a. or b. of the definition of
**insured**." (<u>Id.</u>) This provision refers to cross-claims for
indemnity and contribution made by other defendants in the
underlying suit. In the underlying suit, Defendants have brought
cross-claims against Crosman Corporation and Wal-Mart. <u>See</u> <u>Wong</u>,
(continued...)

"insured" are defined as "you and, if residents of your household: a. your relatives; and b. any other person under the age of 21 who is in the care of a person described above." (<u>Id.</u> at 1.) "You," in turn, is defined as the "named insured" and "your spouse . . . if a resident of your household." (<u>Id.</u>) Here, Jaime, as the named insured, and Ricky, as her resident spouse, fall under the definition of "you," or "the insured." The parties do not dispute that Bryson and Jared were also "insured" under the Homeowner's Policy at the time of the underlying incident, as they were both minor sons living with Jaime and Ricky. (<u>See</u> Pl.'s CSF, Ex. A (Underlying Complaint) ¶ 1; Def.'s CSF at 1.)

        In the instant Motion, State Farm argues that the injuries and damages claimed by Stephen and Joanne, Bryson's grandparents, in the underlying lawsuit "constitute, or are derivative of, bodily injury to an insured," and are thus excluded from coverage under Exclusion 1.h of the Homeowner's Policy. (Mot. at 3.) Defendants do not dispute that claims made by (or on behalf of) Bryson for his own injuries would fall within Exclusion 1.h (Opp'n at 1); however, they counter that the claims in the underlying lawsuit are independent claims for "bodily injury" to Stephen and Joanne and, thus, do not fall

---

[4]/(...continued)
Civ. No. 13-1-0327, Doc. Nos. 8, 88. Likewise, Crosman Corporation and Wal-Mart have each separately brought cross-claims against the Defendants. <u>Id.</u>, Doc. Nos. 108 & 109.

                                    12

under Exclusion 1.h. (Opp'n at 5-9.)

As noted above, the Homeowner's Policy generally covers claims made "for damage because of bodily injury or property damage to which this coverage applies." (See Pl's CSF, Ex. B at § II.L, p. 15.) Bodily injury, in turn, is defined as "physical injury, sickness, or disease to a person, [including] required care, loss of services and death resulting therefore." (Pl.'s CSF, Ex. B at 2.) The definition of bodily injury generally excludes claims for emotional distress, "unless [they] arise[] out of actual physical injury to some person." (Id.)

In the underlying complaint, Stephen and Joanne bring claims for emotional distress and loss of society, companionship, comfort, consortium,[5] protection, and filial care and attention. (Pl.'s CSF, Ex. A.) Defendants state that the underlying claims for emotional distress are claims for "bodily injury" as that

---

[5] State Farm asserts in its Reply that Stephen and Joanne's claim for "loss of consortium" is not viable here because loss of consortium is limited to claims asserted by spouses, derived from the marital relationship. (Reply at 8.) State Farm is incorrect, however, as the Hawaii Supreme Court has recognized a claim for "filial consortium," or a cause of action brought by a parent based upon death or severe, permanent harm to a child. See Masaki v. General Motors Corp., 780 P.2d 566, 576-77 (Haw. 1989). In so holding, the Hawaii Supreme Court looked to Hawaii's wrongful death statute, which permits a wrongful death suit (including a suit for loss of filial consortium) to be brought by not only surviving spouses, children, and parents, but also by "any person wholly or partially dependant" upon the deceased or severely injured person. Haw. Rev. Stat. § 663-3. It thus appears that a filial consortium claim based upon a severe, permanent injury to a grandchild would not necessarily be foreclosed under Hawaii law.

term is defined in the Homeowner's Policy because it "arises out
of physical injury to another person[,]" namely, Bryson Wong.
(Opp'n at 7.) The Court agrees that these claims constitute
claims for bodily injury as that term is defined in the policy:
they are claims for emotional distress that "arises out of
physical injury to another person." (See Pl.'s CSF, Ex. B at 2.)
Similarly, Defendants correctly assert that the remaining claims
brought by Stephen and Joanne are likewise claims for "bodily
injury" because the definition of bodily injury in the policy
includes "required care, loss of services and death resulting
[from the bodily injury,]" and their claims for loss of society,
companionship, and consortium are just such claims. (Id.)

        Exclusion 1.h, however, states that "Coverage L [the
personal liability coverage for claims 'for damage because of
bodily injury'] do[es] not apply to . . . bodily injury to you or
any insured . . . ." (Pl.'s CSF, Ex. B §II.1.h.) Under Hawaii
law, insurance contracts are to be "construed according to the
entirety of [the] terms and conditions as set forth in the policy
. . .." Haw. Rev. Stat. § 431:10-237. Reading the general
personal liability coverage provision together with Exclusion
1.h, the Court concludes that the Homeowner's Policy expressly
and unambiguously excludes all claims brought for damages
"because of bodily injury" to "any insured." (See id. §§ II.L,
II.1.h.) Under such a reading, the exclusion encompasses claims

                              14

by third parties that are dependent upon, or derivative of, an insured's bodily injury because these are just such claims brought for damages "because of bodily injury" to an insured. <u>See</u> <u>Burlington Ins. Co.</u>, 383 F.3d at 945 ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.").

Here, Defendants concede that Bryson was an "insured" under the Homeowner's Policy. (Opp'n at 1; Def.'s CSF at 1.) Thus, to the extent any of the claims in the underlying lawsuit are derivative of Bryson's own claim for bodily injury, they are subject to Exclusion 1.h.[6]

> **1. Application of Exclusion 1.h to Claims for Loss of Society, Companionship, Comfort, Filial Consortium, Protection, and Filial Care and Attention**

First, as to Defendants' claims for loss of society, companionship, comfort, filial consortium, protection, and filial care and attention, Defendants state that these claims constitute or are akin to claims for "loss of services" arising out of bodily injury to Bryson. (<u>Id.</u> at 5, 7.) Under Hawaii law, claims for loss of filial consortium are derivative, meaning that a plaintiff may only recover if the tortious harm the injured party

---

[6] Likewise, there is no dispute that Jaime and Ricky are insureds under the policy; thus, to the extent Defendants are asserting that there is coverage based upon any potential claims that they may have arising out of the accident, these clearly fall within the exclusion for bodily injury to an insured in Exclusion 1.h.

15

suffered would have entitled the injured party to maintain an action. See Omori v. Jowa Haw. Co., 91 Haw. 146, 146 P.2d 703 (Haw. 1999) (characterizing loss of filial consortium as a derivative action); Winters v. Silver Fox Bar, 797 P.2d 51, 56 (Haw. 1990) (concluding that the mother of a deceased minor could not sue a commercial liquor supplier under Hawaii's wrongful death statute because her "loss of love and affection claims under [the statute] are derivative" and her son was not entitled to bring a claim against the liquor supplier himself); see also Doi v. Hawaiian Ins. & Guar. Co., 727 P.2d 884, 891 (Haw. App. 1981) (holding that loss of consortium is a derivative claim, and will not support liability beyond the coverage provided to the injured individual).

Moreover, claims similar to loss of consortium, such as loss of society, affection, companionship, comfort, etc., are also considered derivative under Hawaii law. See Yamamoto v. Premier Ins. Co., 668 P.2d 42, 48 (Haw. App. 1983), overruled on other grounds by Doi, 727 P.2d 884 ("We realize that loss of consortium is a derivative claim arising from the loss of services, companionship, society, and conjugal benefits caused by injuries which were negligently or wrongfully inflicted upon one's spouse."); Winters, 797 P.2d at 56 (characterizing a mother's claim for "loss of love and affection" based upon her son's death as "derivative"); Hara v. Island Ins. Co., Ltd., 759

P.2d 1374, 1375-76 (Haw. 1988) (stating that the damages recoverable under Haw. Rev. Stat. § 663-3, Hawaii's wrongful death statute, "are derivative"); Haw. Rev. Stat. § 663-3 (listing damages recoverable under Hawaii's wrongful death statute, including loss of society, companionship, consortium, attention, protection, comfort and filial care and attention).

Thus, under Hawaii law, Stephen and Joanne's claims for loss of society, companionship, comfort, consortium, protection, and filial care and attention are all clearly derivative of Bryson's claim for bodily injury. These derivative claims are brought "because of bodily injury" to Bryson, who was an insured. As such, under the plain language of the Homeowner's Policy, they are exactly the type of claims that are contemplated by Exclusion 1.h: claims made for damages arising from bodily injury suffered by an insured. It therefore appears that the Homeowner's Policy provides no coverage for these claims in the underlying lawsuit.

### 2.    Application of Exclusion 1.h to Claims for Negligent Infliction of Emotional Distress

As to Stephen and Joanne's remaining claims, their claims for negligent infliction of emotional distress, Defendants argue that the underlying lawsuit should be covered under the Homeowner's Policy because these claims are non-derivative claims for bodily injury to Stephen and Joanne (i.e., claims for emotional distress to Stephen and Joanne "aris[ing] out of physical injury to another person[, namely, Bryson]"), and thus

17

not subject to Exclusion 1.h. Citing <u>First Insurance Company of Hawaii, Ltd., v. Lawrence</u>, 881 P.2d 489 (Haw. 1994), Defendants argue that Stephen and Joanne's claims for emotional distress are independent legal claims because Stephen and Joanne were directly injured themselves by witnessing Bryson immediately after he had been shot. (Opp'n at 17-21.) Thus, Defendants argue, Stephen and Joanne's recovery is not dependent upon the viability of Bryson's claim and therefore falls outside of the exclusion for claims brought because of bodily injury to an insured.

<u>Lawrence</u> involved an insurance coverage dispute over an underlying lawsuit involving claims of wrongful death brought by the family of a pedestrian who was killed by an intoxicated, unlicensed minor driver. The family of the deceased argued that their negligent infliction of emotional distress ("NIED") claim was independent, rather than derivative, and thus should not be subject to the single liability coverage limit in their automobile insurance policy. <u>Lawrence</u>, 881 P.2d at 491-92. While the court in <u>Lawrence</u> did acknowledge that a claim for NIED, even in the absence of physical injury to the claimant, can constitute an independent tort under Hawaii law, the court ultimately concluded that the family's claim was derivative and dependent upon the success of the claims brought directly on behalf of the son by his estate. <u>Id.</u> at 500. In so holding, however, the court stated that, had the family "been witnesses to the event that

18

caused [their son's] death, they would have non-derivative and
wholly independent NIED claims that would trigger separate single
limits under the policy as to each proven claim." Id.

Applying the Lawrence decision, the Hawaii Supreme
Court in Dennison held that a non-derivative NIED claim generally
only exists where the plaintiff actually witnesses the event that
causes the harm to the spouse or family member. Liberty Mutual
Fire Ins. Co. v. Dennison, 120 P.3d 1115, 1123 (Haw. 2005). In so
holding, the Hawaii Supreme Court specifically rejected
Dennison's claim that he had an independent, non-derivative claim
for NIED where he came upon the scene of his son's car accident
thirty minutes after it occurred, and witnessed attempts at
resuscitation and his unconscious son's removal from the scene by
helicopter. Id.

In a footnote, however, the Dennison court acknowledged
that the Lawrence case "recognized the potential for an
independent claim by a family member for witnessing serious
injury to a close relation coming onto the scene of the event
soon thereafter." Id. at 1123 n.8 (internal quotation marks and
alterations omitted).[7] The Court concluded, however, that on the

_____

[7] In Lawrence, the court indicated that an independent NIED
claim may exist for a plaintiff who either witnessed the
accident, or who was "timely present at the immediate scene
of the accident." 881 P.2d at 500. In its holding, the Lawrence
court stated that plaintiffs' NIED claim was not independent
because they had not "been witnesses" to the accident; however,
(continued...)

facts of the case before it, no such claim could be made. <u>Id.</u> In concluding that Dennison did not have an independent NIED claim, the court noted (1) that Dennison arrived at the triage area down the street from the site of the collision approximately thirty minutes after the accident, (2) that Dennison had not witnessed unsuccessful revival efforts because his son had ultimately survived (albeit with severe injuries, including brain damage), and (3) that Dennison had not witnessed his son in pain, as his son had been "unconscious and completely unresponsive" when Dennison came upon him.[8/] <u>Id.</u> at 1123 & n.8. The court therefore concluded that Dennison's claim for emotional distress was derivative of his son's claims for injury and he could not bring a separate claim for benefits under his insurance policy. <u>Id.</u> at 1123.

---

[7/](...continued)
in distinguishing the cases the plaintiffs attempted to rely upon, the court noted that they did not witness the accident "nor were they timely present at the immediate scene of the accident." <u>Id.</u> In so stating, the <u>Lawrence</u> court cited a Louisiana Supreme Court case for the proposition that there is an independent cause of action "for witnessing serious injury to a close relation in either viewing the event causing the injury or coming onto the scene of the event soon thereafter." <u>Id.</u> at 500 n.15 (citing <u>Lejeune v. Rayne Brand Hosp.</u>, 556 So.2d 559 (La. 1990)). Thus, as the court in <u>Dennison</u> recognized, the <u>Lawrence</u> court appeared to acknowledge the potential for an independent NIED claim where the claimant did not actually witness the accident, but was nevertheless harmed by arriving shortly thereafter.

[8/] In this Court's view, the latter two seem rather illogical distinctions. Nevertheless, they were relied upon by the Hawaii Supreme Court in reaching its conclusion.

In acknowledging the existence of an independent NIED claim by a family member for "witnessing serious injury to a close relation [or] coming onto the scene of the event soon thereafter," the Dennison court concluded that an independent claim would only exist if the family member "timely arrive[d] at the immediate scene of the accident." Id. at 1123 n.8. Here, it is undisputed that Stephen and Joanne did not actually witness the accident that caused Bryson's injuries; however, the Court finds that there is at least a question of fact as to whether Stephen and Joanne have independent NIED claims because they came "onto the scene of the event soon thereafter." See id.

Specifically, Stephen states that "[i]mmediately after Bryson was shot, Jared ran next door to Stephen and Joanne's house." (Pl.'s CSF, Ex. A §§ 15-18; Def.'s CSF, Wong Decl. § 4.) In deposition testimony, Stephen states that he called 911 when Jared arrived, but was on the phone for only "[s]econds because they told me someone else had already called and that was Ja[i]mie." (Supp. Depo. of Stephen Wong at 48.) Stephen then went "immediately" over to the Defendants' house, where he found Bryson unresponsive and unconscious, and began performing CPR. (Pl.'s CSF, Ex. A §§ 15-18; Def.'s CSF, Wong Decl. § 4.) Stephen states that all of this occurred "within minutes after Bryson was shot." (Id.) Stephen's CPR efforts succeeded in reviving Bryson after approximately 10 to 12 seconds. (Supp. Depo. of Stephen

Wong at 49.)

Joanne states that, upon Jared's arrival at her house, she ran next door to the Defendants' house where she saw her daughter on the phone (presumably with 911). (Supp. Depo. of Joanne Wong at 12.) She did not see Bryson at that time, and remained at her daughter's house for approximately a minute, after which she removed Bryson's younger sister from the scene, went back to her own house for some amount of time, and then returned to see Stephen still leaning over Bryson. (<u>Id.</u> at 13-14.) When asked how long she stayed at her house before returning next door, Joanne stated that she did not remember; however, she also stated that the paramedics had not yet arrived when she returned to the Defendants' house. (<u>Id.</u> at 14.)

Unlike in <u>Dennison</u>, where the father arrived approximately thirty minutes after his son's accident, in the instant case, there is at least a question of fact as to whether Stephen and Joanne "timely" arrived at the scene of the accident. <u>See Dennison</u>, 120 P.3d at 1123 n.8. While the Court cannot determine the timing as a matter of law based on the evidence before it, it is clear that Stephen and Joanne arrived upon Bryson's accident scene within minutes, and certainly far sooner than the father in <u>Dennison</u>. Thus, by the <u>Dennison</u> court's logic, it appears that there is at least a question of fact as to whether Stephen and Joanne may assert independent, non-derivative

claims for emotional distress under Hawaii law.[9/] The Court
therefore concludes that there is a question of fact as to
whether Stephen and Joanne's emotional distress claims are
excluded by Exclusion 1.h of the Homeowner's Policy.[10/] Because
the Court concludes that there is the possibility of coverage,
State Farm has a duty to defend Defendants as to the emotional
distress claims. See Dairy Rd. Partners, 992 P.2d at 107-08.

        As noted above, Stephen and Joanne's remaining claims
for loss of society, companionship, comfort, consortium,
protection, and filial care and attention are all derivative of
Bryson's bodily injury and therefore are excluded from coverage
by Exclusion 1.h of the Homeowner's Policy. See Omori, 146 P.2d
at 703. Importantly, however, "where a suit raises potential for
indemnification liability of the insurer to the insured, the
insurer has a duty to accept the defense of the entire suit even
though other claims of the complaint fall outside the policy's
coverage." Hawaiian Holiday Macadamia Nut Co., 872 P.2d at 233.

---

        [9/] Indeed, the Court notes that the Dennison court cited
with approval a case that found that both parents could assert
independent claims under an insurance policy where a mother
actually witnessed the automobile accident in which her son was
struck, and the father did not witness the accident but learned
of his son's injuries within ten minutes. See Dennison, 120 P.3d
at 1121 (citing Employers Cas. Ins. Co. v. Foust, 29 Cal. App. 3d
382, 105 Cal. Rptr. 884 (1971)).

        [10/] The Court notes that this case will involve a non-jury
trial; therefore, the Court will ultimately be the finder of fact
in determining whether Stephen and Joanne "timely" arrived at the
scene of the accident.

Thus, because the Court finds that there is the potential for coverage for the emotional distress claims under the Homeowner's Policy, State Farm must provide a defense as to all claims against Defendants in the underlying suit.

The Court therefore GRANTS IN PART AND DENIES IN PART State Farm's Motion as to the Homeowner's Policy.

## B. Coverage Under the Umbrella Policy

The language of the Umbrella Policy is substantially similar to that of the Homeowner's Policy. The Umbrella Policy provides coverage "[i]f a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies[.]" (Pl.'s CSF, Ex. C (Umbrella Policy) at 6.) A "loss" is defined as an accident that "results in **bodily injury** or **property damage** during the policy period." (Id. at 2 ¶ 7.) The Umbrella Policy defines "bodily injury" as "physical injury, sickness or disease to a person, including death resulting therefrom."[11/] (Id. at 1 ¶ 2.) The definition goes on to state that bodily injury does not include "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury or any resulting physical injury unless it arises out of actual physical injury to

_____

[11/] The Court notes that the Umbrella Policy does not include in the definition of "bodily injury" "required care, loss of services and death resulting therefrom," as did the Homeowner's Policy. (See Pl.'s CSF, Ex. B at 2; Ex. C.)

24

some person." (<u>Id.</u> at 2 ¶ 2.c.)

Similar to the Homeowner's Policy, the Umbrella Policy excludes coverage for "**bodily injury** or **personal injury**[12]/ to any **insured**[.]"[13]/ (<u>Id.</u> at 9 ¶ 13 ("Exclusion 13").) The Umbrella Policy defines the "insured" as "**you** and **your relatives** whose primary residence is **your** household." (<u>Id.</u> at 2 ¶ 6.) "You" is defined, in turn, as the named insured and the named insured's spouse. (<u>Id.</u> at 4 ¶ 15.) Here, Ricky and Jaime are the named insureds under the Umbrella policy; Bryson and Jared, as their resident sons, are also insureds as that term is defined in the policy. Defendants do not appear to dispute this. (<u>See</u> Opp'n at 1.)

Based upon the plain language of the Umbrella Policy, it provides coverage for claims for "damages because of a loss,

---

[12]/ "Personal injury" is defined in the Umbrella Policy as "injury other than bodily injury arising out of one or more of the following offenses: a. false arrest, false imprisonment, wrongful eviction, wrongful detention of a person; b. abuse of process, malicious prosecution; c. libel, slander, defamation of character; or d. invasion of a person's right of private occupancy by physically entering into that person's personal residence. (<u>Id.</u> at 2-3 ¶ 8.)

[13]/ As did Exclusion 1.h in the Homeowner's Policy, the exclusion in the Umbrella Policy goes on to state that it includes "any claim made or suit brought against any **insured** to share damages with or repay someone else who may be obligated to pay damages because of such **bodily injury** or **personal injury**[.]" (<u>Id.</u>) As noted above, this provision refers to cross-claims for indemnity and contribution made by other defendants in the underlying suit.

[or, an accident resulting in bodily injury,] for which the insured is legally liable and to which th[e] policy applies[.]" (Id. at 2, 6.) Exclusion 13 of the Umbrella Policy expressly excludes from coverage, however, bodily injury "to any insured." (Id. at 9 ¶ 12.) As noted above, under Hawaii law, insurance contracts are to be "construed according to the entirety of [the] terms and conditions as set forth in the policy . . .." Haw. Rev. Stat. § 431:10-237. Thus, reading the Umbrella Policy provisions together, because the policy broadly excludes "bodily injury . . . to any insured," any "loss" - or accident resulting in bodily injury - that is derivative of bodily injury to an insured is excluded from coverage. See Dairy Rd. Partners, 992 P.2d at 106 ("[T]he terms of [an insurance] policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended." (alterations omitted)).

Here, as discussed above, all of Stephen and Joanne's claims other than their claims for emotional distress are derivative of Bryson's claims for bodily injury under Hawaii law. See Doi, 727 P.2d at 891 (stating that "derivative claims such as loss of consortium arising from bodily injuries suffered by one's spouse . . . are dependent for [their] viability upon the personal injury to one's spouse."). The "loss" - or accident resulting in bodily injury - that Stephen and Joanne's derivative

26

claims are premised upon is the accidental shooting of Bryson in the heart with the air rifle. The subject "bodily injury" of their claims is therefore the resultant bodily injury to Bryson. Because Bryson is an insured under the Umbrella Policy, those claims are clearly excluded from coverage by Exclusion 13. Thus, based on the plain language of the policy, and for the reasons discussed above, the Court concludes that there is no possibility of coverage under the Umbrella Policy for Stephen and Joanne's claims for loss of society, companionship, comfort, consortium, protection, and filial care and attention.

As discussed above, however, there is at least a question of fact as to whether Stephen and Joanne "timely" arrived at the scene of Bryson's accident, such that their claims for NIED are independent, non-derivative claims under Hawaii law. See Dennison, 120 P.3d at 1123 n.8. Should the emotional distress claims be found to be independent and not derivative of Bryson's bodily injury, they would not be claims "for damages because of a loss [or, an accident resulting in bodily injury,]" to an insured, and thus would not be excluded by Exclusion 13. (See Pl.'s CSF, Ex. C.) The Court therefore concludes that there is a material issue of fact as to whether Stephen and Joanne's claims for emotional distress are covered under the plain language of the Umbrella Policy. State Farm therefore has a duty to defend Defendants as to the emotional distress claims. See Dairy Rd.

Partners, 992 P.2d at 107-08. Moreover, as discussed above, because State Farm has a duty to defend Defendants as to some of the underlying claims, it must tender a defense as to all claims asserted against them in the underlying suit. See Hawaiian Holiday Macadamia Nut Co., 872 P.2d at 233.

The Court therefore GRANTS IN PART AND DENIES IN PART the Motion as to the Umbrella Policy.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART State Farm's Motion for Summary Judgment. The Court GRANTS the Motion insofar as it concludes that there is no possibility of or basis for coverage under either the Homeowner's Policy or the Umbrella Policy for the underlying claims for loss of society, companionship, comfort, consortium, protection, and filial care and attention. The Court DENIES the Motion insofar as it concludes that there are questions of fact as to the possibility of coverage under the Homeowner's Policy and Umbrella Policy for the underlying claims for negligent infliction of emotional distress.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 13, 2015



_____
Alan C. Kay
Senior United States District Judge

<u>State Farm Fire and Casualty Co. v. Cabalis et al.</u>, Civ. No. 13-00489 ACK-RLP, Order Granting in Part and Denying in Part State Farm's Motion for Summary Judgment.